UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HENRY DIAZ, | ) | |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 19-11361-JCB |
| CITY OF SOMERVILLE, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]
[Docket No. 42]

February 3, 2022

Boal, M.J.

In this action, plaintiff Henry Diaz, a former Somerville police officer, alleges discrimination on the basis of his race in violation of Title VII and Massachusetts law.[2] Defendant City of Somerville has moved for summary judgment in its favor. Docket No. 42. I heard oral argument on September 1, 2021. For the following reasons, I grant the motion.

I.   SCOPE OF THE RECORD

As a preliminary matter, I must determine the proper scope of the record. Diaz has filed a motion to strike certain exhibits submitted by the City of Somerville as well as some of the statements of fact in the City's Statement of Undisputed Facts. Docket No. 51. For the

---

[1] On August 22, 2019, the parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. Docket No. 14.

[2] The Amended Complaint also contained a retaliation claim in violation of Title VII and Massachusetts law. Amended Complaint at ¶¶ 31-39. Diaz voluntarily dismissed the retaliation claim on July 18, 2019. Docket No. 9.

1

following reasons, I deny Diaz's motion to strike.

At summary judgment, supporting material need not be submitted in a form admissible in evidence but the proponent must show that the evidence is susceptible to being presented in such a form. See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Therefore, where a party objects to proffered evidence for want of authentication, the proponent of the evidence need not in fact authenticate the evidence. Sanchez-Pares v. Mapfre Puerto Rico, No. 18-1917, 2021 WL 359985, at *1 (D.P.R. Feb. 2, 2021) (citing Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 418 n. 11 (1st Cir. 2018)). Rather, the proponent must merely "show that the material is admissible as presented or . . . explain the admissible form that is anticipated" for trial. Id. (citing Fed. R. Civ. P. 56, Advisory Committee Notes (2010)). Although a sworn affidavit is unnecessary, some showing is required. Id. (citation omitted).

    A.    <u>Video Of the Incident And Related Statements Of Fact</u>

Diaz argues that this Court should not consider a video of the alleged June 30, 2017 altercation that is the subject of this case because it has not been authenticated and it cannot be presented in a form that would be admissible in evidence. Docket No. 52 at 3, 9, 13. He also argues that this Court should disregard all of the City's statements of undisputed facts that are based on the video. See id. I disagree.

"Authentication is a straightforward concept requiring a 'reasonable probability' that the item in dispute is what its proponent claims." Asociacion De Periodistas De Puerto Rico v. Mueller, 680 F.3d 70, 79 (1st Cir. 2012) (citing Fed. R. Evid. 901(a); United States v. Cruz, 352 F.3d 499, 506 (1st Cir. 2003)). "The proponent 'need not rule out all possibilities inconsistent with authenticity;' so long as the 'evidence is sufficient to allow a reasonable person to believe

2

the evidence is what it purports to be,' it is left to the factfinder to determine what weight it deserves." Id. (citing United States v. Alicea-Cardoza, 132 F.3d 1, 4 (1st Cir. 1997)).

The City has submitted the affidavit of Shannon T. Phillips, Assistant City Solicitor for the City of Somerville. Docket No. 59-1. Ms. Phillips' affidavit states that Exhibit B to the City's statement of undisputed facts is a true and accurate copy of the surveillance video that was reviewed by the City in conjunction with the disciplinary matter against Diaz and that was submitted to the Civil Service Commission without objection by counsel for Diaz. Id. at ¶ 7. She also states that the video was retrieved as a part of the disciplinary process involving Diaz and was received by her and kept by the City in the usual course of business. Id. at ¶ 8. Diaz has not credibly suggested that the video does not depict the incident in question. Accordingly, I find that the video is susceptible to being presented in admissible form at trial.

B.  Affidavit Of Former Police Chief David Fallon (Exhibit F)

Diaz also moves to strike paragraphs 5, 6, and 7 of the Affidavit of Former Police Chief David Fallon on the grounds that such paragraphs "contain attestations concerning a claim based on the contents of his conversations with other people and/or speculation that amount to inadmissible hearsay." Docket No. 52 at 2. Fallon, however, is attesting to what information he relied upon in recommending Diaz's termination. He is allowed to do so.

C.  Findings Of The Civil Service Commission

In addition, Diaz objects to consideration of the decision of the Civil Service Commission and the paragraphs of the City's statement of undisputed facts that rely on that decision as hearsay. Docket No. 52 at 4-11.[3] The City, however, is not offering the Civil Service

---

[3] Curiously, however, Diaz has not disputed several of the statements of fact he seeks to have stricken and, in fact, has also included some of the same statements in his own statement of material facts. Compare, e.g., Resp. ¶¶ 1-2, 5-6 with Resp. ¶¶ 70, 78-79.

Commission's decision for the truth of the matter asserted.  Rather, the City argues that the Civil Service Commission's findings have preclusive effect in this action.  See Docket No. 59 at 4.  It is appropriate to consider the Civil Service Commission's findings for that purpose.  See O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 457 (D. Mass. 2018) (citations omitted) ("'[J]udicial notice is properly taken of orders and decisions made by other courts or administrative agencies' when the preclusive effect of those decisions is at issue.").  Similarly, it is proper for this Court to consider the Decision of the Appointing Authority Officer and the Decision of Reconsideration not for the truth of the matters asserted but as evidence of the state of mind of the relevant decision makers.  This Court addresses the preclusion argument below.  Therefore, Diaz's objection is overruled.

        D.        Opinion Testimony And Conclusory Statements

Finally, Diaz moves that this Court strike paragraphs 54-55 and 58 of the City's statement of undisputed facts as inadmissible opinion testimony and/or conclusory statements.  Docket No. 52 at 11-12.  Frankly, this argument is puzzling.  Those paragraphs contain uncontroversial statements regarding the procedural history of the litigation.

Accordingly, I deny Diaz's motion to strike.

II.        FACTS[4]

Diaz is a Black-Hispanic male who was born in the Dominican Republic.[5]  He was hired

---

[4] The facts are taken from the Defendant's Statement of Undisputed Facts (Docket No. 44) ("SOF") and Plaintiff Henry Diaz's Consolidated Statement of Material Facts (Docket No. 50) ("Resp.").  Because this case is before the Court on a motion for summary judgment, this Court sets out any disputed facts in the light most favorable to Diaz, the nonmoving party, and resolving all reasonable inferences in his favor.  See Clarendon Nat'l Ins. Co. v. Philadelphia Indemnity Ins. Co., 954 F.3d 397, 403-404 (1st Cir. 2020) (citations omitted).

[5] Resp. ¶ 63.

as a police officer with the City of Somerville in February 2008.[6]  Prior to the June 30, 2017 incident at issue in this case, Diaz performed his job satisfactorily and had no disciplinary records in his personnel file.[7]

Sometime between 2:15 and 2:30 a.m. on June 30, 2017, while off-duty from his position as a Somerville police officer, Diaz was driving down Chelsea Street in East Boston with his friend "KT" in the passenger seat of his vehicle.[8]  At some point, a male civilian ("DB") came out of nowhere and crossed onto the street in front of Diaz's vehicle, which caused Diaz to make a sudden stop.[9]  The interaction resulted in a physical altercation between Diaz and DB.[10]

On July 11, 2017, Diaz was placed on administrative leave while the incident was investigated.[11]  Lt. Timothy Mitsakis of the Somerville Police Department completed an internal investigation of the June 30th incident.[12]  During an interview conducted in the course of that

---

[6] Resp. ¶ 70.

[7] Resp. ¶¶ 72, 73.

[8] Resp. ¶ 78.

[9] Resp. ¶ 79.

[10] Resp. ¶ 83.

[11] SOF ¶ 31; Resp. ¶ 31.

[12] SOF ¶ 31.  Diaz states that he is "without sufficient information to admit or deny" whether Lt. Mitsakis completed an internal investigation of the June 30th incident.  Resp. ¶ 31.  A party opposing summary judgment cannot create a genuine issue of fact by denying statements, which the moving party contends are undisputed and supported by sufficient evidence, on the basis that he lacks knowledge and information to admit or deny the statement.  See, e.g., Cooper v. City of New Rochelle, 925 F. Supp. 2d 588, 605 (S.D.N.Y. 2013).  Discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny the moving party's statements of fact.  AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc., No. 06 Civ. 2142, 2007 WL 4302514, at *4 (S.D.N.Y. 2007).  Thus, whenever Diaz responds that he lacks information to admit or deny a fact, this Court deems that fact admitted for purposes of the City's motion for summary judgment.

investigation, Diaz maintained that he struck DB because he was in fear of imminent harm.[13]  At the conclusion of his investigation, Lt. Mitsakis concluded that Diaz had violated the Department's Rules & Regulations relating to truthfulness and conduct unbecoming an officer.[14]  Chief David Fallon concurred and recommended to the appointing authority that Diaz be disciplined up to and including termination.[15]

After providing Diaz with notice, a local appointing authority hearing was held on November 2, 2017 by a hearing officer designated by the City, Attorney Peter Berry.[16]  Diaz, who was represented by counsel, chose not to testify on his own behalf.[17]  Attorney Berry found that Diaz had engaged in conduct unbecoming an officer and that he was untruthful during his interview by Lt. Mitsakis.[18]  He also found that termination of Diaz's employment was warranted under the circumstances.[19]  Via letter dated December 13, 2017, the Mayor of Somerville adopted the findings and recommendation of Attorney Berry and the recommendation of Chief Fallon and terminated Diaz from his position as a police officer.[20]

On December 27, 2017, pursuant to M.G.L. c. 31, § 43, Diaz filed an appeal with the Civil Service Commission (the "Commission"), contesting the decision of the City to terminate

---

[13] Resp. ¶ 32.

[14] SOF ¶ 34.

[15] Id.

[16] SOF ¶ 35.  Diaz disputes this statement but cites to no evidence to refute it.

[17] Id.

[18] SOF ¶ 37.

[19] Id.

[20] SOF ¶ 39.

his employment as a Somerville police officer.[21]  The Commission held three days of hearings on June 11, July 13, and August 17, 2018.[22]  Diaz was represented by counsel and testified on his own behalf.[23]

After hearing the evidence, the Commission found, inter alia, that the City had shown that Diaz engaged in substantial misconduct which adversely affects the public interest. Specifically, it found that "[b]ased upon review of the clear surveillance video of the incident in question, and evidence presented during the course of the hearing, Mr. Diaz did not act in self-defense when striking DB repeatedly on June 30, 2017.  Rather, the evidence shows Mr. Diaz was the aggressor during this incident."[24]  In addition, the Commission stated that:

> The video does not support Mr. Diaz's claim that he felt imminent danger before he struck DB.  Rather, the video shows Mr. Diaz to be the aggressor by striding forcefully across the street towards DB with a clear purpose to strike DB.  At that point, DB had withdrawn from the conflict.
>
> More generally, Mr. Diaz failed repeatedly to de-escalate what began as a rather minor and routine incident.  Mr. Diaz stopped his truck and exited the vehicle to continue to engage in an altercation with a civilian beginning when he jaywalked.  While DB and Mr. Diaz appeared to have a verbal exchange of words, this does not justify the escalation that occurred, including Mr. Diaz exiting his vehicle.  As referenced in the findings, Mr. Diaz exited his vehicle before there was any reference to a gun.  Instead of getting out of his vehicle, he had the opportunity to leave the scene and avoid the continued interaction.  He admits he was angry during the incident and could not explain why he did not stay in his car and drive away other than it being a bad mistake.[25]

---

[21] SOF ¶ 40.

[22] SOF ¶ 41.

[23] Id.

[24] Docket No. 44-1 at 11.

[25] Docket No. 44-1 at 12-13.

The Commission also determined that Diaz was untruthful:

> During his recorded interview as part of the internal affairs investigation, he initially told the interviewer that he hit [DB] in self-defense as he felt in imminent danger. He described in detail how he felt he was about to be struck and had no choice but to hit [DB]. During his testimony before the Commission, Mr. Diaz acknowledged that the video does not support his prior statements to investigators. Specifically, he acknowledged during his testimony before the Commission that any alleged raising of the hands by DB would have occurred after Mr. Diaz had repeatedly struck DB. Mr. Diaz's argument that simply remembering things differently does not constitute untruthfulness is not persuasive for two reasons. First, he chose not to testify at the local hearing and offer that explanation at the time the City was deciding whether there was just cause to terminate him as a police officer. Second, his explanation is not plausible. This is not a case of simply failing to remember a minor detail (i.e. – what words were exchanged, how many times he struck DB, etc.). Rather, he stated to investigators that he was in fear of DB and that he continued to strike DB until he was no longer in fear. Mr. Diaz's own testimony, the video evidence and common sense show that this *core argument* by Mr. Diaz (rather than a minor detail) was simply not true. It cannot be attributed to an innocent lapse of memory.[26]

Before the Commission, Diaz argued that other officers had received lesser discipline for similar or worse offenses.[27] The Commission rejected that argument, finding that:

> As stated in the findings, Mr. Diaz himself ruled out any type of settlement agreement when the issue was broached by his union representative. I carefully reviewed all of the documents in Exhibit 14 and the parties' arguments regarding whether the actions or inactions by the City showed that Mr. Diaz was subject to disparate treatment. In each case, I have found that the City has distinguished those matters from the instant appeal, either because the misconduct was not as serious, the employees are no longer employed as police officers or the matters were subject to settlement agreements.[28]

---

[26] Docket No. 44-1 at 13 (emphasis in original).

[27] See Docket No. 44-1 at 16.

[28] Docket No. 44-1 at 16.

The Commission considered that Diaz had no prior discipline in his record.[29] Nevertheless, it concluded that:

> While the Commission has consistently stated that progressive discipline is consistent with the requirement of basic merit principles, the seriousness of the misconduct here, which includes pummeling a private citizen who was not posing a physical threat to Mr. Diaz, and then lying about the reasons for this misconduct, warrant termination, even in the absence of prior discipline.[30]

Accordingly, the Commission denied Diaz's appeal.[31] Diaz did not appeal the Commission's decision but rather moved for reconsideration.[32] On June 30, 2019, the Commission denied Diaz's motion for reconsideration and the Commission's decision became final.[33]

III.  ANALYSIS

    A.  Standard Of Review

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party – here, Diaz – "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the moving party is entitled to a judgment as a matter of law.'" Zabala-De Jesus v. Sanofi-Aventis Puerto Rico, Inc., 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)). A dispute is genuine where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation

---

[29] Docket No. 44-1 at 18.

[30] Id.

[31] Id.

[32] SOF ¶¶ 54-55.

[33] SOF ¶ 55.

omitted). A material fact is one with the "potential of changing a case's outcome." Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st Cir. 2018). "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Brandt v. Fitzpatrick, 957 F.3d 67, 75 (1st Cir. 2020) (quoting Ray v. Ropes & Gray LLP, 799 F.3d 99, 116-117 (1st Cir. 2015)).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "A plaintiff opposing a properly documented summary judgment motion must carry 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" Trahan v. Wayfair Maine, LLC, 957 F.3d 54, 60 (1st Cir. 2020) (quoting Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-7 (1986) (warning that the non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence").

  B. Race Discrimination And The McDonnell Douglas Framework

Diaz brings claims under Title VII and Massachusetts law. Under Title VII, it is unlawful for an employer "to discharge . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, under Massachusetts law, it is unlawful "for an employer, by himself or his agent, because of the race [or] color . . . of any individual to . . . discharge from employment such individual . . ." M.G.L. c. 151B, § 4(1).

Where, as here, the plaintiff alleges employment discrimination on the basis of race and there is no direct evidence of discrimination, the Court analyzes his claims under the burden-shifting framework that the United States Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Taite v. Bridgewater State Univ., Board of Trustees, 999 F.3d 86, 93 (1st Cir. 2021).  Under that framework, to survive summary judgment, Diaz must put forth evidence from which a reasonable juror could find that he has established a prima facie case of discrimination, namely, that (1) he belongs to a protected class; (2) he was qualified for the position of police officer; (3) the employer took an adverse employment action against him; and (4) the position remained open or was filled by a person with similar qualifications.  See Ray v. Ropes & Gray LLP, 799 F.3d at 113 (citation omitted).

If the plaintiff succeeds in putting forth sufficient evidence of a prima facie case, "[t]he burden of production then 'shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action.'"[34]  Paul v. Murphy, 948 F.3d 42, 50 (1st Cir. 2020) (citations omitted).  If the defendant articulates such a reason, the "burden of production shifts 'back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory.'"  Zabala-De Jesus, 959 F.3d at 428 (citations omitted).[35]

---

[34] This burden is one of production, not of persuasion.  Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 73, n. 6 (1st Cir. 2019) (citing Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 142 (2000)).  Thus, the burden of persuasion never shifts to the defendant-employer under the McDonnell Douglas framework.  Id.

[35] Though the analysis under Title VII and Chapter 151B is substantially similar, see, e.g., Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215, n. 9 (1st Cir. 2016), this is one area where the two differ.  Massachusetts is a "pretext only" jurisdiction, meaning that the plaintiff "need only present evidence from which a reasonable jury could infer that '[the employer's] facially proper reasons given for its action against [him] were not the real reasons for that action'

"A plaintiff can 'establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could' rationally find them unworthy of credence and hence 'infer that the employer did not act for the asserted [nondiscriminatory reasons].'" Taite, 999 F.3d at 94 (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000)). Moreover, to establish pretext, "[t]here are many veins of circumstantial evidence that may be mined" as "courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff." Id. (quoting Mesnick v. Gen. Elec., 950 F.2d 816, 824 (1st Cir. 1991)). Ultimately, in order to survive summary judgment, Diaz need not prove his case but rather "viewing the aggregate package of proof [he] offered, [he] 'need only show that [his] ability to meet [his] burden turns on a genuine issue of material fact." Id. (internal citations omitted). "For purposes of the summary judgment analysis, then, the question becomes whether a reasonable jury could find that . . . [the City's] proffered reason is pretextual and that [Diaz] was in fact . . . [fired] because of [his] . . . race." Id. (citations omitted).

1. For Purposes Of Summary Judgment, Diaz Has Provided Sufficient Evidence Of A Prima Facie Case

For purposes of its motion only, the City concedes that Diaz has shown the first, third, and fourth prongs of the prima facie case. See Docket No. 43 at 14. The City argues that Diaz has not met the second prong because he cannot show that he was performing his job at an acceptable level because he engaged in conduct unbecoming a police officer and was untruthful regarding the June 30, 2017 incident. Id. However, where, as here, the employer relies on

---

to survive summary judgment." Theidon v. Harvard Univ., 948 F.3d 477, 505 (1st Cir. 2020) (quoting Bulwer v. Mount Auburn Hosp., 473 Mass. 672 (2016)). "In other words, Massachusetts law differs from federal law in that plaintiffs do not need to establish both discriminatory animus and pretext; they just need to show pretext." Id. at 505, n. 39.

deficient job performance as its legitimate, nondiscriminatory reason for the termination, this Court may not "consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case," because doing so would "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." Melendez v. Autogermana, Inc., 622 F.3d 46, 51 (1st Cir. 2010) (citations omitted). Thus, because the City invoked Diaz's alleged misconduct in arguing that he was discharged for nondiscriminatory reasons, see Docket No. 43 at 15, this Court cannot rely on it assessing whether he satisfied the second prong of the prima facie case.

    2.    Issue Preclusion Bars Diaz From Relitigating Issues Crucial To His Chapter 151B Claim And, Therefore, That Claims Fails As A Matter Of Law

The City argues that it has put forth legitimate, nondiscriminatory reasons for its decision to terminate Diaz and that Diaz is unable to demonstrate pretext. Docket No. 43 at 15-17. Specifically, the City alleges that it terminated Diaz's employment as a police officer because the surveillance video, Diaz's own admissions and testimony before the Commission, and the Commission's findings show that he engaged in conduct unbecoming a police officer, to wit, initiating a physical altercation with a civilian and striking that individual multiple times. Id. at 15. In addition, Diaz was untruthful and unremorseful regarding the incident. Id.

Further, the City argues that given the Commission's findings, Diaz is precluded from relitigating whether he was untruthful or whether he acted in a manner that was unbecoming an officer. Docket No. 43 at 17-19. Therefore, the City continues, Diaz cannot attack the City's reasons for terminating him as illegitimate or argue that he was performing his job at an acceptable level at the time of his termination. Id. at 18-19. The City also argues that Diaz is precluded from relitigating whether he was treated disparately than other officers in his

termination. Id. at 19. Therefore, Diaz cannot prove that he was treated differently on the basis of race and his claims must fail. Id. For the following reasons, I find that issue preclusion applies to Diaz's Chapter 151B claim but not his Title VII claim.

    a.    The Commissions Unreviewed Findings Have No Preclusive Effect On Diaz's Title VII Claim

The Full Faith and Credit Statute, 28 U.S.C. § 1738, provides that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories . . . as they have by law or usage in the courts of such State . . . from which they are taken." "It is well-settled that a proceeding in a state court collaterally estops inconsistent arguments in a later federal action . . ." Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 28 (1st Cir. 1998) (citing Allen v. McCurry, 449 U.S. 90, 104-105 (1980)). "Preclusive effect is given not only to state judicial proceedings, but also to facts found by a 'state agency acting in a judicial capacity [that] resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" Id. (quoting University of Tenn. v. Elliot, 478 U.S. 788, 798 (1986)). However, "unreviewed state administrative proceedings [do not] have preclusive effect on Title VII claims." Elliot, 478 U.S. at 796.

Here, the Commission's findings were never reviewed by a state court. The City concedes that the U.S. Supreme Court's decision in Elliot forecloses the application of res judicata to Diaz's Title VII claim. Docket No. 64 at 2. The City, however, argues, with little to no citation to any legal support, that the doctrine of issue preclusion can and should be applied to bar Diaz from relitigating factual issues resolved by the Commission in the context of his Title VII claim. Id. at 2-4. I disagree.

Following Elliot, courts have uniformly found that unreviewed state agency factual findings may not be given issue preclusive effect in subsequent Title VII actions. See, e.g.,

14

Hillman v. Shelby Cty. Government, 297 F. App'x 450, 452-453 (6th Cir. 2008); Bishop v. Birmingham Police Dep't, 361 F.3d 607, 610 (11th Cir. 2004); Rao v. Cty. Of Fairfax, Va., 108 F.3d 42, 45 (4th Cir. 1997); Roth v. Koppers Industries, Inc., 993 F.2d 1058, 1059 (3rd Cir. 1993); McInnes v. State of California, 943 F.2d 1088, 1093-1094 (9th Cir. 1991); Afrasiabipour v. Pennsylvania Dep't of Transp., 469 F. Supp. 3d 372, 384 (E.D. Pa. 2020). This Court has been unable to find any decisions making the distinction between issue and claim preclusion that the City argues should be applied in this case. Accordingly, I find that Diaz is not precluded from relitigating factual issues decided by the Commission in connection with his Title VII claim.

      b.     Issue Preclusion Bars Diaz's Chapter 151B Claim

Unlike with Title VII claims, unreviewed state agency determinations may have preclusive effect in subsequent Chapter 151B actions "so long as the tribunal rendering judgment has the legal authority to adjudicate the dispute." Alba v. Raytheon Co., 441 Mass. 836, 841 (2004). In determining whether to give preclusive effect to the findings of a state agency, Massachusetts law applies.[36] See Baez-Cruz, 140 F.3d at 28; Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 50-51 (1st Cir. 1997). Under Massachusetts law, issue preclusion may be used defensively if "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment." Green v. Town of Brookline, 53 Mass. App. Ct. 120, 123 (2001) (citations

---

[36] The law of the state system in which the federal court sits applies. Willhauck v. Halpin, 953 F.2d 689, 704 (1st Cir. 1991) (citing Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 83-84 (1984)).

omitted). "If the conditions for preclusion are otherwise met, '[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction.'" Id. at 123-124 (citations omitted).

Here, there is no dispute that Diaz was a party to the proceeding before the Commission. Diaz argues that there was no final judgment because he "was able to appeal it to the Superior Court." See Docket No. 49 at 23. However, while he had the opportunity to appeal the Commission's decision within thirty days of the date of the decision, see M.G.L. c. 31, § 44, on the present record before this Court, it is undisputed that he did not in fact appeal. Rather than disputing that fact, Diaz argues that this fact is immaterial and objects to it on hearsay grounds. See Resp. ¶¶ 54-55. As shown by this discussion, this fact is indeed material to the preclusion issue. It is also not hearsay. Accordingly, I find that Diaz has not raised a genuine dispute regarding whether the decision of the Commission was a final adjudication on the merits.

Diaz also challenges the identity of the issues and the necessity of the contested issues to the Commission's ruling. See Docket No. 49 at 23-24. The primary issue before the Commission was whether the City had "just cause" to terminate Diaz. See M.G.L. c. 31, § 43; see also Town of Falmouth v. Civil Service Com'n, 61 Mass. App. Ct. 796, 800 (2004) (citations omitted) ("The issue for the commission is 'not whether it would have acted as the appointing authority had acted, but whether, on the facts found by the commission, there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision.'").[37] As discussed

---

[37] A finding of just cause under M.G.L. c. 31, § 41 "requires a determination whether the employee's misconduct 'adversely affects the public interest by impairing the efficiency of the public service.'" Green, 53 Mass. App. Ct. at 124, n. 6 (quoting Cambridge v. Baldasaro, 50

16

above, the issues before this Court include whether the City had a legitimate, non-discriminatory reason to terminate Diaz.  By finding just cause for the termination, the Commission necessarily concluded that the City had a legitimate reason to terminate Diaz.  Among other things, the Commission determined that Diaz had engaged in conduct unbecoming a police officer because he was the aggressor and failed repeatedly to de-escalate the situation.  See Docket No. 44-1 at 12-13.  In addition, the Commission found that Diaz was untruthful by claiming that he felt imminent danger before he struck DB.  These findings were necessary to the Commission's finding of just cause.  Therefore, Diaz is precluded from relitigating whether the City had a legitimate reason to terminate Diaz's employment.

In addition, Diaz has chosen to prove pretext in this case by arguing that he was treated disparately from other similarly situated white officers.  See Docket No. 49 at 21-23.  Diaz chose to litigate before the Commission whether he was treated disparately from other police officers in his termination.[38]  See Docket No. 44-1 at 16.  Though the Commission appears to have made no findings regarding racial bias, it made a finding of fact that the cases cited by Diaz in support of his claim of disparate treatment were not comparable because the misconduct was not as serious, the employees were no longer employed as police officers, or the matters were subject to settlement agreements.  Id.  Therefore, the Commission found that he had not been subject to disparate treatment.  See id.  Such finding is sufficiently similar to the finding necessary to show pretext in this case for purposes of issue preclusion.  See Kosereis v. Rhode Island, 331 F.3d 207,

---

Mass. App. Ct. 1, 3 (2000)).

[38] It is not clear whether Diaz presented to the Commission the same instances of discipline against other officers that he has presented here.  Nevertheless, "issue preclusion is premised on a party's prior opportunity to litigate an issue, not on whether the party made the best use of that opportunity."  In re Goldstone, 445 Mass. 551, 560 (2005).  There is no dispute that Diaz chose, and had the opportunity, to litigate the disparate treatment issue before the Commission.

214 (1st Cir. 2003) (to show disparate treatment, plaintiff must show "that others similarly situated to him in all relevant respects were treated differently by the employer.").

With respect to the necessity of that finding to the Commission's decision, Massachusetts courts have:

> expand[ed] the applicability of [collateral estoppel] to encompass certain findings not strictly essential to the final judgment in the prior action . . . if it is clear that the issues underlying them were *treated as essential* to the prior case by the court and the party to be bound. Stated another way, it is necessary that such findings be the product of full litigation and careful decision.

Green, 53 Mass. App. Ct. at 126-127 (quoting Comm'r of the Dept. of Employment & Training v. Dugan, 428 Mass. 138, 144 (1998)) (emphasis in original). As detailed above, the Commission made extensive findings of fact on the underlying issue of whether the City had just cause to terminate Diaz, including whether he had been treated disparately from other similarly situated officers. The Commission's decision was dependent on those findings. In addition, the Commission's findings that the City had just cause to terminate Diaz was the "product of full litigation and careful decision." Green, 53 Mass. App. Ct. at 127 (citing Dugan, 428 Mass. at 144). Therefore, the finding that Diaz was not treated disparately was essential to the Commission's decision. Accordingly, I find that, for purposes of his Chapter 151B claim, Diaz is precluded from relitigating whether the City had legitimate reason to terminate Diaz and whether he was treated disparately from similarly situated officers. Because he is precluded from relitigating those issues, then his Chapter 151B claim must fail as a matter of law.

    3.    <u>In Any Event, Diaz Has Failed To Raise Any Triable Issues Regarding His Title VII Claim</u>

As stated above, issue preclusion does not apply to Diaz's Title VII claim. Therefore, for purposes of his Title VII claim, Diaz is not precluded from relitigating any issues decided by the

18

Commission.  Regardless, I find that, for purposes of summary judgment, the City has met its burden to articulate a legitimate non-discriminatory reason for Diaz's termination.  Specifically, the City has provided evidence at this stage that it terminated Diaz because he was found to have acted in a manner unbecoming a police officer during the June 30, 2017 incident and that he was untruthful about the incident.  See SOF ¶ 60; Docket No. 44-6.  Therefore, in order to survive summary judgment, Diaz must raise a triable issue regarding pretext.

Diaz could show that an employer's stated reasons are pretextual in any number of ways. Kosereis, 331 F.3d at 214.  One method is to produce evidence that that the plaintiff was treated differently than other similarly situated individuals, see id., which is what Diaz has chosen to do here.  See, e.g., Resp. ¶¶ 109-140; Docket No. 49 at 21-23.  To successfully allege disparate treatment, Diaz must show "that others similarly situated to him in all relevant respects were treated differently by the employer."  Kosereis, 331 F.3d at 214 (citations omitted).  "The examples of disparate treatment 'need not be perfect replicas, [but] they must closely resemble one another in respect to relevant facts and circumstances.'"  Id. (citation omitted).

Here, Diaz has put forth evidence of instances where white police officers received lesser discipline for what he characterizes as similar or worse instances of misconduct.  See Resp. ¶¶ 109-140.  Diaz cites examples of, inter alia, white police officers accused of assaulting civilians and engaging in domestic violence who were not terminated by the City for their misconduct. See, e.g., Resp. ¶¶ 111-114.  The examples cited by Diaz, however, are insufficient to show pretext because they do not involve facts or circumstances similar to those Diaz faced. Specifically, Diaz has not pointed to any other instances where a police officer was found both to have assaulted a civilian while off duty and to have lied about the incident during the

investigation.[39]  Accordingly, I find that Diaz has failed to raise a triable issue regarding pretext.

IV.	ORDER

For the foregoing reasons, I deny Diaz's motion to strike and grant the City's motion for summary judgment.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[39] Diaz points to one instance where an officer was accused of both assaulting a civilian and being untruthful.  See Resp. ¶¶ 117, 138.  Unlike Diaz, however, that officer was not found to have lied about the assault itself.  Rather, he was found to have been untruthful for telling the District Attorney's Office that he was unable to appear in court because he was out disabled when he was not.  See Docket No. 50-7 at 5.